FILED
MISSOULA, MT

2006 MAR 15  AM 10 33

PATRICK E. DUFFY
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| ANTHEL L. BROWN, | ) | CV 04-66-H-DWM |
| Petitioner, | ) | |
| vs. | ) | ORDER |
| MIKE MAHONEY, Warden, Montana State Prison, and MONTANA BOARD OF PARDONS AND PAROLE | ) | |
| Respondents. | ) | |

On June 28, 2005, United States Magistrate Judge Carolyn S. Ostby filed Findings and Recommendation in this matter. Plaintiff, a pro se prisoner, timely objected on July 27, 2005. Plaintiff is therefore entitled to de novo review of the record. 28 U.S.C. § 636(b)(1).

**I. Background**

Brown was originally convicted of felony theft, sexual assault, robbery, aggravated assault, and deliberate homicide. On January 30, 2003, the Montana Board of Pardons and Parole ("the Board") denied Brown's parole application. The Board

1

signed a standard "Case Disposition" form that informed Brown: "After careful evaluation of all relevant facts known to the Board, including those under Section 46-23-202(1), MCA, and in accordance with Sections 46-23-201 through 46-23-218, MCA, the Board denies your parole application or reapplication at this time." By checking available boxes on the form and making brief remarks, the Board first indicated that it believed there was a "reasonable probability that [Brown was] not at present able and willing to fulfill the obligations of a law-abiding citizen" due to his institutional conduct, particularly his history of misconduct, and his institutional custody level. Second, the Board noted the nature and severity of Brown's multiple offenses, previous criminal history, and previous escape from custody and concluded that there was a "reasonable probability that [Brown could not] be released at [that] time without being a detriment to [himself] of [sic] the community . . . [and] [r]elease at [that] time would not be in the best interest of society." Finally, the Board indicated its belief that there was "a need for education, job training, treatment, or continued treatment to enhance success on parole and further insure that [Brown was] willing and able to fulfill the obligations of a law-abiding citizen." The Board indicated that it believed Brown needed sex offender treatment.

Brown filed a federal habeas petition challenging the Board's decision to deny his release. In her review of his petition and supplemental filings, Judge Ostby helpfully

reorganized Brown's claims into three categories: (1) due process under Board of Pardons v. Allen, 482 U.S. 369 (1987); (2) review periods; and (3) retaliation.

## II. Analysis

### A.  Standard of Review under 28 U.S.C. § 2254(d)

Having filed a federal habeas petition challenging an administrative decision, Brown's claims are governed by 28 U.S.C. § 2254(d). White v. Lambert, 370 F.3d 1002, 1005 (9th Cir. 2004). He is only entitled to relief under § 2254(d) if the state court decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

### B.  Merits of Petition[1]

#### 1.  Due Process under Board of Pardons v. Allen, 482 U.S. 369 (1987)

Because Brown is a Montana prisoner sentenced when the language of Montana Code Annotated § 46-23-201 was still mandatory, he has a liberty interest in parole release that is protected by the Due Process Clause, and he is thus entitled to due process in his parole proceedings. See Allen, 482 U.S. at

---

[1] Judge Ostby reviewed the merits of Brown's petition despite the possibility that it may be barred by the federal statute of limitations. In reviewing Judge Ostby's Findings and Recommendation, this Court likewise reviews the merits of Brown's petition.

3

377-78. As Judge Ostby noted, the Supreme Court has held that a parole board meets the requirements of due process by affording a parole applicant "an opportunity to be heard" and informing him "in what respects he falls short of qualifying for parole." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 15 (1979).

Brown does not dispute that he received a parole hearing. Instead he claims that he presented a case for his release that met all the requirements of Montana Code Annotated § 46-23-201 and the Board still denied his application due to its bias and partiality. According to Brown, "[g]iven the information which was available to the Board, at the time the Petitioner should have been considered for parole, there is absolutely no doubt the [sic] there was a 'reasonable probability' that the Petitioner could have been released without being a detriment to himself or the community." Objections at 3. In addition, he alleges that the Board never explained what facts supported its decision to deny him parole.

The Supreme Court held in Allen that the Montana statute in question here makes the Board's decision "subjective" and "predictive" and that the Board has "very broad" discretion in applying the statutory requirements. 482 U.S. at 381. Nothing in its written decision indicates that the Board abused its broad discretion or ignored available information. In fact, the Board's decision indicates that it considered relevant facts, including Brown's history of institutional misconduct, the nature

4

and seriousness of Brown's multiple underlying offenses, Brown's previous criminal history, and his attempted escape from prison. According to the Court in Greenholtz, these were all proper considerations. 442 U.S. at 15 ("The parole determination therefore must include consideration of what the entire record shows up to the time of the sentence, including the gravity of the offense in the particular case. The behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to the parole release.").

Brown complains that the Board improperly made his completion of a sex offender treatment program a prerequisite to his release. However, nothing in the Board's decision indicates that Brown must complete sex offender treatment prior to being reconsidered for parole or even being paroled. The Board simply noted its opinion that Brown needs to enroll in sex offender treatment "to enhance success on parole and further insure that [he] is willing and able to fulfill the obligations of a law-abiding citizen."

The Board's decision gave Brown sufficient information regarding in what areas the Board thought Brown fell short of meeting the prerequisites for release. That Brown was adequately notified of those areas is evidenced by the fact that he has made substantial efforts to become classified as a low-security inmate, and the fact that he is complaining in this petition of being placed in a facility that does not offer the sex offender

treatment program.

In his objection, Brown also contends that the Board should not have considered some of his institutional misconduct because it happened after 1993 when he was entitled to have his initial parole hearing. However, any time the Board reviews a parole application it must make the determination whether "there is a reasonable probability that [the applicant is] . . . *at present* able and willing to fulfill the obligations of a law-abiding citizen." The Board is required to consider what is in the best interest of society. Thus, in its inquiry, the Board could not ignore facts that lessened the probability that Brown was able and willing to be a law-abiding citizen simply because it should have reviewed his application earlier. Brown does not dispute that he engaged in misconduct prior to the Board's initial review of his application. His misconduct was, as the Supreme Court stated in Greenholtz, "critical" to the Board's analysis of his application regardless of when the hearing occurred.

Upon de novo review of the record, this Court finds no error in Judge Ostby's conclusion that Brown is not entitled to relief under § 2254(d) based on the Due Process Clause.

### 2. Review Periods

Brown also claims he has a right to annual parole review under Kelly v. Risley, 865 F.2d 201 (9th Cir. 1989), and thus the Board improperly set his progress review date for three years after his initial review. In his objections, Brown claims there is no administrative avenue open to an inmate to have his parole

6

application reviewed earlier than the date set by the Board if his circumstances have changed. He contends that this distinguishes cases in Montana from the cases cited by Judge Ostby, and means that the Ex Post Facto Clause is violated when the length of time between parole reviews is extended by a Montana parole board.

At the time Kelly was decided, the Administrative Rules of Montana § 20.25.401(8) mandated that an inmate denied parole for more than one year would be afforded annual review. See 865 F.2d at 203. However, even though the law subsequently changed and no longer requires annual parole review, the application of the new law in Brown's case does not violate the Ex Post Facto Clause simply because it could potentially result in Brown spending more time in prison. See Himes v. Thompson, 336 F.3d 848, 855 (9th Cir. 2003). The Ex Post Facto Clause would be violated only if the retroactive application of the new regulation created a "sufficient risk" that the measure of punishment attached to Brown's crimes will be increased. Id.

Here, it cannot be said that application of a new regulatory scheme that allows for longer periods between parole review creates a sufficient risk that the measure of Brown's punishment will be increased. As Judge Ostby noted, Brown attached to his own petition an affidavit from the Board's Executive Secretary, Craig Thomas, filed in Case v. Fleming, CV 03-18-H-LBE (D. Mont. 2004), explaining that there is now a "safety valve" in place that will allow a parole applicant to obtain earlier parole

7

review if his circumstances have changed significantly since his last review.[2] In Case, Judge Erickson found that this "safety valve" allows parole applicants "in effect, the same opportunity to obtain earlier review now as they did when annual reviews were standard." See Order at 4, Case (Aug. 9, 2004) (dkt #24). Based on the evidence Brown provided, this Court finds no error in Judge Ostby's conclusion that the Board's deferral of Brown's parole review violates the Ex Post Facto Clause.

### 3. Retaliation

Finally, Brown claims that at his January 2003 parole hearing, the Board told him he must be classified as low-security and complete a sex offender treatment program before they would consider paroling him in the future. According to Brown, prison officials have since denied him job placement on the low-security side of the prison and transferred him to a facility that does not offer a sex offender treatment program in retaliation for his attempts to obtain a parole hearing in January 2003 and other attempts to remain in low-security status.

First, as discussed above, the Board's decision does not make low-security classification or sex offender treatment a prerequisite to parole. Second, the Board has not denied Brown parole based on his failure to retain low-security status or

---

[2]Although Brown did not raise any issue pertaining to the "safety valve" or accelerated review in front of Judge Ostby, I am exercising my discretion to review the supplemental contention offered by Brown in his objection to Judge Ostby's Findings and Recommendation pursuant to Espinoza-Matthews v. California, 432 F.3d 1021, 1026 n.4 (9th Cir. 2005).

8

complete a sex offender treatment program. Judge Ostby is correct in characterizing his claim as one that should be brought against the prison officials rather than the Board.

**C.  Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Judge Ostby's Findings and Recommendation (**dkt #17**) are adopted in full.

2.  Brown's petition for writ of habeas corpus (**dkt #9**) is DENIED on the merits.

3.  Brown's Motion for Preliminary Injunction (**dkt #23**) based on denial of access to legal materials and legal assistance by mail is DENIED as moot.

DATED this 14 day of March, 2006.

Donald W. Molloy, Chief Judge
United States District Court